(Superior Court of Cincinnati—*Special Term.*)

ISABEL H. NEFF ET AL. *v.* THE CITY AND SUBURBAN BUILDING AND
LOAN COMPANY ET AL.

The rule that in ascertaining boundary lines, course and distance must give way to natu-
ral objects, must be exercised with a sound discretion ; but when there is not an ob-
ject called for and proved, the corner must stand where course and distance lead.

(Decided October 31, 1894.)

---

HUNT, J.

This is an amicable proceeding, in which all the parties pray the court
to fix and determine the boundaries of certain real estate in the subdivis-
ion made by the sheriff of Hamilton county, in case No. 93,172, of the Court
of Common Pleas of Hamilton County, Ohio, and recorded it plat book 13,
page 7, of the land records of Hamilton county, Ohio, and being a part of
the homestead tract of William Howard Neff.

The plaintiffs are the owners of the lots in the sub-division, namely,
from 1 to 12, inclusive. A mortgage was executed on this property by
William Howard Neff to the Peerless Building & Loan Company of Cin-
cinnati, Ohio, on April 8, 1890, and recorded in book 596, page 92. This
mortgage was foreclosed, and the title to the respective lots is now held in
fee simple by the parties to this proceeding.

The description of the tract before the sub-division, and concerning
which the controversy has arisen, is as follows: "Commencing at a point
in the division line between Neff and Wilder, one hundred and twenty-five
(125) feet from the roadway, forty (40) feet in width, leading from Grand
avenue to the residence of William Howard Neff; thence northeastwardly
parallel with said roadway three hundred (300) feet to a point; thence
westerly at right angles one hundred and twenty-five (125) feet to said road-
way three hundred (300) feet; thence easterly one hundred and twenty-
five (125) feet to the place of beginning."

William Howard Neff subsequently executed a mortgage to The City
& Suburban Building & Loan Company. (Mortgage Book 602, page 252),
and described as beginning at a point on the southerly side of this road-
way leading from Grand avenue to the residence of William Howard Neff,
which roadway is forty (40) feet in width, and definitely located at the
northeast corner of a tract heretofore conveyed to the Peerless Building As-
sociation by mortgage recorded in book 596, page 92, of the real estate rec-
ords of Hamilton county, Ohio, and running thence in an easterly direc-
tion along the southerly side of said roadway four hundred (400) feet, etc.

William Howard Neff executed a mortgage to the Liberal Loan & Build-
ing Company, (Mortgage Book 605, page 117), and described as "commenc-
ing in the roadway through the homestead property of William Howard

Neff, lying east of Grand avenue, Price Hill, Cincinnati, Ohio, at the intersection with said roadway of the east line of the property mortgaged to The City & Suburban Building Association," and extending six hundred feet along said roadway.

It is claimed by the defendants that the subdivision of the tract of land mortgaged to the Peerless Building & Loan Company, and described as above, was incorrectly located; that the northerly corner of said subdivision on said driveway should have been located nearer to the entrance to said driveway, and that the northeasterly line of said subdivision should have been located along a line radial to the course of said driveway at the northerly corner of the subdivision. The plaintiffs say that the location of the other two tracts depends on the location of the first tract, and that by reason thereof there is a cloud on the title to the lots owned by them respectively.

It was the understanding among counsel that the statement of William Howard Neff, as well as that of Mr. Punshon, who made the survey, and the letter of Col. Latham Anderson, of April 11, 1894, should be considered as testimony in the case, and that the respective plats should be considered by the court.

It is contended by counsel for the City & Suburban Building & Loan Company that the starting point, which is a "point in the division line between Neff's and Wilder's, and one hundred and twenty-five feet from the roadway," is indefinite. This is met by the statement of William Howard Neff, who caused the sub-division to be made, that the starting point of the tract mortgaged to the Peerless Building & Loan Company was intended to be in the line between Neff and Wilder, and at such a distance from the Neff corner on Grand avenue, on the roadway, that a line drawn therefrom at right angles to his roadway would make lots 125 feet in depth fronting on the roadway. This leaves, it is true, a triangular tract near this entrance not covered by the mortgage, but this Mr. Neff stated was according to his intention at the time. The surveyor, Mr. Punshon, took the starting point as explained by Neff, and then followed the first call of the mortgage description, which is 300 feet on a line parallel with the roadway.

This distance can not be disregarded or shortened unless the course was ended by some monument which would be of more binding force than courses and distances. When the course, however, ends not at a monument, but at a point, then the course and distance must stand. The rule is thus stated in *McCoy* v. *Galloway*, 3 Ohio, 282:

"It is admitted that course and distance must give way to natural objects, but this rule has limits, and must be used with sound discretion. When a natural object is distinctly called for and satisfactorily proved, it becomes a land mark not to be rejected, because the certainty which it affords excludes the probability of mistake, while course and distance, depending for their correctness on a great variety of circumstances, are constantly liable to be incorrect. Difference in the instruments used, and in the care of surveyors and their assistants, must lead to different results. Hence it is that this rule has been established. But in the case before us, the natural objects called for have not been proved. If the plaintiff had established his sugar and ash corner in or near the direction of his first course, and the hickory and beech corner in or near the course of his second line, those corners must have been sustained, although they might have varied from the course and distance in the patent, provided that variance were not too great to be ascribed to the causes just mentioned. But when the corner claimed by a party has no similitude to the one he has made and recorded as his land mark, he can not aid himself by resorting to this rule. He must be governed by the converse of it, that when there is

not an object called for and proved, varying from his course and distance, he must make his corner where course and distance lead him."

See, also, *Hamill* v. *Carr*, 21 Ohio St. 258.

This line, then, being fixed, the balance of the survey must be correct.

The court is the more constrained to this opinion since both the mortgages to defendants were taken subsequently to the mortgage to the Peerless Building & Loan Co., and in one of which, at least, express reference is made to the prior mortgage. Lot No. 12, too, was improved on the faith of this subdivision, by the erection of a substantial structure since said subdivision was made.

There is no reason, either in law or in equity, why the subdivision made in case No. 93177, in court of common pleas, as recorded in Plat Book 13, at page 7, of the land records of Hamilton county, Ohio, being the subdivision described as stated by Earnshaw in plat No. 1 submitted in evidence, should not stand as the correct description and the title to the same quieted as against the claims of the defendants herein.

Decree accordingly.

*Reuben Tyler*, *Barton & Dorger*, *W. H. Hosea* and *E. J. Dempsey*, for plaintiffs.

*B. F. Ehrman* and *Cobb & Howard*, for defendants.